# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00448-CV

---

**Empower School, LLC, Appellant**

**v.**

**Covenant Management Systems, LP, Appellee**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-002332, THE HONORABLE MARIA CANTÚ HEXSEL, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Empower School leased a commercial space to appellee Covenant Management Systems, LP. After Empower failed to make certain renovations to the space's pool area, as set out in Section 3(c) of the lease agreement, Covenant refused to accept the premises and filed suit, seeking a declaratory judgment that the lease had not commenced and that it was not obligated to accept the premises in their unsuitable state. A jury determined that Section 3(c) was a condition precedent to the commencement of the lease and that Empower failed to fulfill the condition precedent. The trial court signed a final judgment incorporating the jury's verdict, granting Covenant's declaratory-judgment claim, and awarding Covenant damages and attorney's fees. By three issues, Empower contends that the trial court's judgment is erroneous because: (1) Section 3(c) was a covenant, not a condition precedent; (2) two of the court's declarations were not proper subjects for a declaratory-judgment claim; and (3) Covenant

was not entitled to damages under the Uniform Declaratory Judgment Act (UDJA). Because we conclude that Section 3(c) is not a condition precedent, we reverse and remand in part and reverse and render in part.

## I.    BACKGROUND

Empower provides therapeutic and educational services to children on the autism spectrum. In 2015, Empower acquired commercial property in Round Rock, Texas, and began providing services there. However, to supplement its bottom line, Empower began leasing portions of the 19,331 square foot building, including the swimming pool, to other entities. Initially, Empower leased the swimming-pool portion of the property to a swimming school. In 2018, Empower decided to lease the entire property, including the swimming pool, to other entities at a higher rate, as it began searching for other, more affordable spaces out of which to operate.

Empower hired Asterra Properties as property brokers to locate tenants for the building. Through this process, Empower and Covenant eventually began negotiating a twelve-year lease for the entire property. Covenant provides administrative services to Austin Regional Clinic (ARC), which in turn provides medical services to patients. Covenant sought to rent the property on ARC's behalf for use as a specialty clinic. During lease negotiations, Covenant sought either to exclude the pool area from the lease agreement or have the swimming pool removed and filled in prior to the commencement of the lease. The Asterra Properties broker assured Covenant's broker via email that "[t]he landlord will demise the pool from the clinic space." On August 9, 2018, Covenant signed a letter of intent reflecting that Empower would "convert pool area to useable space and install HVAC."

On October 26, 2018, Covenant and Empower executed a lease agreement for the entire property, including the swimming pool. Covenant paid Empower $96,291.09 as a deposit. As part of the lease, the parties agreed as follows:

| | |
|---|---|
| **SECTION 3. TERM** | (a) <u>Term Defined</u>. The Term of this Lease begins on the Commencement Date . . . . At Landlord's or Tenant's Request, and no later than ten (10) days following the Commencement Date, Landlord and Tenant shall execute a Commencement Date Memorandum in the form attached hereto as <u>Exhibit G</u>. |
| | . . . . |
| | (c) <u>Condition of the Premises</u>. By executing the Lease, Tenant shall be deemed to have accepted the Premises in their AS-IS condition as of the date of the execution except for specific Landlord work requirements related to the Pool Area as described herein. Landlord is required to completely fill, remove and fill, or use another commercially approved method to eliminate the pool and renovate the Pool Area to at least a shell condition consistent with the standards of the rest of the building, including a slab foundation level with the existing pool deck. |

The lease agreement further specified that the term of the lease would commence "on the date established by Exhibit 'G' ('Commencement Date')." Exhibit G,[1] the Commencement Date Memorandum, provided, in relevant part:

> Unless Landlord exercises its option to defer commencement as set forth fully below, the Commencement Date of the Lease shall be

---

[1] In Section 25(m) of the lease agreement, the parties agreed that the attached exhibits were incorporated by reference.

the date upon which Landlord and Tenant mutually agree that Tenant accepts the Premises, but not more than Three Hundred Sixty-Five (365) days after the day the Lease is executed.

Landlord shall have an option to defer the commencement date for a period of One Hundred Eighty (180) days by giving Tenant written notice of Landlord's intent to defer not less than nine (9) months after execution of the Lease.

Thus, by any interpretation of the lease agreement, there could, and likely would be, a substantial gap of time between the execution of the lease agreement and the date on which the lease commenced.

Therefore, during this time, Empower sought to minimize losses by continuing to lease the pool area to a third party and continuing to operate its business out of the property while it continued searching for a different building to move into. On July 15, 2019, Empower exercised its option under the lease agreement to defer the commencement date by 180 days. Around this same time, Empower began reaching out to contractors about filling in the pool area. However, it continued to postpone filling in the pool area to generate additional rental income. It was not until April 13, 2020, that Empower's contractor applied for a permit with the city of Round Rock to fill in the swimming pool. And it was not until April 21 that Empower signed a lease to move its operations to a different building. Nevertheless, on April 23, Empower notified Covenant that the property would be ready and the lease would commence on April 26.

The parties proffer different consequences associated with the date April 23, 2020; Empower urges that this was the date by which the lease would begin, regardless

4

of whether it completed the pool renovations,[2] whereas Covenant argues that this was the date by which Empower was required to complete the pool renovations, or else Covenant's obligations under the lease would not arise. But under either interpretation, the pool renovations were not complete on that date. According to Empower, the renovations were finished on April 25, 2020, and according to Covenant, even those renovations did not bring the pool area "to at least a shell condition consistent with the standards of the rest of the building," as was required by Section 3(c).

Thus, Covenant refused to accept the premises and instead, on April 27, it filed suit, seeking a declaratory judgment that, *inter alia*, (1) Section 3(c) of the lease, which required Empower to complete the pool renovations, was a condition precedent to commencement of the lease, (2) Empower had not timely and adequately completed the pool renovations, (3) Covenant was not obliged to accept the premises and the lease had not commenced, and (4) Empower was obligated to return the $96,291.09 that Covenant had paid as a deposit. Empower answered and counterclaimed for breach of contract and fraud.[3]

On July 5, 2023, Empower filed a motion pursuant to Rule 248, requesting that the court find that Section 3(c) was not a condition precedent to Covenant's performance. *See* Tex. R. Civ. P. 248 ("When a jury has been demanded, questions of law, motions, exceptions to pleadings, and other unresolved pending matters shall, as far as practicable, be heard and determined by the court before the trial commences . . . ."). The court denied this request, found "that the section is ambiguous," and left the issue of whether the section was a covenant or a

---

[2] According to Empower's witnesses below, Empower misinterpreted the commencement-date provision of the lease and believed that the lease would commence on April 26 rather than April 23.

[3] Empower later abandoned its fraud claim.

5

condition precedent for the jury to decide. Empower later filed a motion to reconsider this decision, which the trial court denied.

On July 11, 2023, a four-day jury trial commenced. At the conclusion, the jury returned a verdict finding that: (1) the parties mutually intended Section 3(c) to be a condition precedent to commencement of the lease term, and (2) Empower did not "satisfy Section 3(c) per the deadlines set forth in Exhibit G." Based on its instructions, which required the jury to find in Empower's favor on either the first or second question to reach the third question, the jury did not resolve whether Covenant complied with the lease agreement.

The trial court rendered judgment on the jury's verdict and included the following declarations:

a) that the Lease was scheduled to commence on October 26, 2019;

b) that, based on Empower's letter dated July 15, 2019, Empower deferred commencement of the lease until April 23, 2020;

c) that a condition precedent to Covenant's acceptance of the Premises and the commencement of the Lease was Empower satisfying the requirements of Section 3(c) of the Lease entitled "Condition of the Premises[";]

d) that Empower failed to deliver the Premises to Covenant in the agreed upon condition on or before April 23, 2020;

e) that Empower failed to timely satisfy conditions precedent to the commencement of the Lease;

f) that the Lease has not commenced;

g) that Covenant is not obligated to accept the Premises;

h) that Covenant is not liable to Empower for any past due or future amounts allegedly owed under the Lease;

6

i)      that Covenant has otherwise complied with the provisions of the Lease;

j)      that Covenant is not in default on its obligations under the Lease;

k)      that the Lease is abrogated, null and void;

l)      that Empower shall return the amounts paid by Covenant under the Lease totaling $96,291.09;

m)      that Covenant is the prevailing party and is entitled to its reasonable and necessary attorneys' fees and costs . . . ;

n)      that Covenant is entitled to such other further relief to which it may be justly entitled to receive under Chapter 37 of the Texas Civil Practice & Remedies Code.

It also ordered Empower to pay Covenant $96,291.09 in damages, $611,491.45 in attorney's fees, and $135,000 in conditional appellate attorney's fees. Empower filed a motion for new trial, arguing again that Section 3(c) is unambiguously a covenant and requesting that the judgment be modified to reflect this. The motion was overruled by operation of law, and this appeal followed.

## II.      SECTION 3(c)

By its first issue, Empower contends that the trial court erred by rendering judgment that Section 3(c) was a condition precedent to Covenant's performance, instead of construing the provision as a covenant as a matter of law.

### A.      Contract Ambiguity

The interpretation of an unambiguous contract is a question of law for the court, not the jury, to decide. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 480 (Tex. 2019). Thus, "a trial court errs when it submits an unambiguous contract to the jury

7

rather than construing it as a matter of law." *Id.* "The error is harmless, however, if the jury found as the trial court should have found." *Id.*

Whether a contract is ambiguous is also a question of law that we review de novo. *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020). "[T]he term 'ambiguity' in Texas contract law connotes a greater degree of linguistic indeterminacy than it does in common parlance." *Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 152 (Tex. 2020). Lack of clarity alone does not create an ambiguity in a contract. *Barrow-Shaver Res. Co.*, 590 S.W.3d at 481. "That the parties interpret an agreement differently does not make it ambiguous; ambiguity exists only if both parties' interpretations," or an extant interpretation proffered by neither party, "are reasonable." *Piranha Partners*, 596 S.W.3d at 743–44. "[E]vidence of surrounding circumstances may 'aid the understanding of an unambiguous contract's language,' 'inform the meaning' of the language actually used, and 'provide context that elucidates the meaning of the words employed.'" *Id.* at 749. However, surrounding circumstances cannot be used to create an ambiguity in a contract where none exists. *Id.*

B.      **Conditions Precedent**

"A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992)). "In order to determine whether a condition precedent exists, the intention of the parties must be ascertained; and that can be done only by looking at the entire contract." *Solar Applications Eng'g, Inc.*, 327 S.W.3d at 109 (quoting *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990)). "In order to make performance

8

specifically conditional, a term such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language must normally be included." *Criswell*, 792 S.W.2d at 948. "While there is no requirement that such phrases be utilized, their absence is probative of the parties['] intention that a promise be made, rather than a condition imposed." *Id.*

"Because of their harshness in operation, conditions are not favorites of the law." *Id.* Thus, "[i]n construing a contract, forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible." *Id.* "When the intent of the parties is doubtful or when a condition would impose an absurd or impossible result, the agreement will be interpreted as creating a covenant rather than a condition." *Id.*

## C.    Section 3(c)

Because our analysis rests heavily on the distinction between covenants and conditions precedent, it is important to delve further into the differences between the two. First, "[t]he distinction between conditions and covenants lies in the appropriate remedy for their breach." *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex. 1989). "Breach of a condition results in automatic termination of the leasehold estate upon the happening of stipulated events." *Id.* On the other hand, "[b]reach of a covenant does not automatically terminate the estate, but instead subjects the breaching party to liability for monetary damages, or in extraordinary circumstances, the remedy of a conditional decree of cancellation." *Id.* Thus, "[f]ailure to satisfy a condition precedent generally results in no liability, but failure to perform a contractual obligation may create liability." *McMahan v. Greenwood*, 108 S.W.3d 467, 484 (Tex. App.— Houston [14th Dist.] 2003, pet. denied) (citing *Centex Corp.* 840 S.W.2d at 956).

Section 3(c) provided that Covenant accepted the premises "AS-IS" except for the pool area, which Empower was obligated to renovate. Exhibit G provided that unless Empower exercised its option to defer commencement, the commencement date would be either the date upon which Empower and Covenant "mutually agree[d] that [Covenant] accept[ed] the Premises" or not more than 365 days after the execution of the lease—October 26, 2019. But Empower did exercise its option to defer commencement. Thus, per the plain language of the lease agreement, the commencement date was extended to either 180 days after Empower and Covenant mutually agreed that Covenant accepted the property or to 180 days after October 26, 2019, (meaning April 23, 2020), for a total of 545 days.

Empower argues that this enlarged 545-day deadline is the date on which the lease would commence absent the parties' mutual agreement. But Covenant asserts that Section 3(c) "ties the required renovations of the Pool Area to 'acceptance' of the property" and that "under Exhibit G, 'acceptance' of the property is the trigger for 'Commencement' of the lease 'Term.'" Covenant further asserts that it was not required "to 'accept' the property unless Empower . . . completed the specified renovations to the Pool Area no later than the 'Commencement Date,' and the lease 'Term' d[id] not 'commence' until such 'acceptance.'" Stated otherwise, Covenant contends that Empower was required to complete the pool renovations by the 545-day deadline or the lease did not commence.

The problem with this assertion is that it is atextual. While mutual agreement was one manner in which the lease provided that it would commence, the parties also specified that, even in the face of either party's refusal to agree on Covenant accepting the premises, the lease would commence "not more than Three Hundred Sixty-Five (365) days after the day the Lease is executed" plus 180 days if Empower opted to defer commencement. Neither Section 3(c) nor

10

Exhibit G contain any language conditioning commencement of the lease on Empower's renovation of the pool area, and the absence of this language indicates that the parties intended this provision to be a promise, rather than a condition precedent. *See Criswell*, 792 S.W.2d at 948. Covenant points to the language in Section 3(c) that provides Covenant is "deemed to have accepted the Premises in their AS-IS condition . . . *except for* the specific . . . work requirements related to the Pool Area." (Emphasis added). We note that this language is not and does not purport to be conditional. It simply provides that Covenant did not entirely accept the property as-is and that Empower was required to "completely fill, remove and fill, or use another commercially approved method to eliminate the pool and renovate the Pool Area to at least a shell condition."

But even assuming the "except for" language could be interpreted as conditional, "the conditional language must connect the condition precedent to the conditioned obligation." *Arbor Windsor Ct., Ltd. v. Weekley Homes, LP*, 463 S.W.3d 131, 137 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). Here, while Covenant's deemed acceptance of the premises did not extend to the pool area, Covenant's acceptance of the premises was not made a condition precedent to commencement of the lease, as the lease specified it would commence with or without Covenant's assent on April 23, 2020. *See Criswell*, 792 S.W.2d at 948–49 (where "alternate and independent means" existed for engineer to receive payment, failure to satisfy other means of receiving payment held not to be condition precedent); *C&C Rd. Constr., Inc. v. SAAB Site Contractors, L.P.*, 574 S.W.3d 576, 588–89 (Tex. App.—El Paso 2019, no pet.) (notice provision of contract held not to be condition precedent to receiving back costs and expenses where separate provision allowed for collection of back costs and expenses without notice).

11

Covenant also points to a provision in the lease agreement that provides, "Time is of the essence in this Lease and each and every term, condition and provision hereof." While a time-is-of-the-essence provision may influence whether a deadline in a contract is a condition precedent, *see Argos Res. Inc. v. May Petrol. Inc.*, 693 S.W.2d 663, 665 (Tex. App.—Dallas 1985, writ ref'd n.r.e.), or whether a contract term is material, *TrueStar Petrol. Corp. v. Eagle Oil & Gas Co.*, 323 S.W.3d 316, 319 (Tex. App.—Dallas 2010, no pet.), we still look to the contract as a whole in determining whether a term is a condition precedent, *see Solar Applications Eng'g, Inc.*, 327 S.W.3d at 109. Otherwise, any contract with a time-is-of-the-essence provision would presumably convert its terms into conditions precedent, and we have declined to hold as a per se rule that such provisions convert contract terms into material covenants, much less conditions precedent. *See MHI P'ship, Ltd. v. Real Est. Inv. Co.*, No. 03-04-00485-CV, 2008 WL 3877717, at *5 (Tex. App.—Austin Aug. 20, 2008, pet. denied) (mem. op.).

Section 3(c) contains no date by which Empower was required to complete its repairs. In Section 3(b), which immediately precedes Section 3(c), the parties agreed that if Covenant "is delayed in its construction of its improvements and such delays continue for more than 90 days and are [the] direct result of [Empower's] action or inaction, then [Covenant] may cancel this Lease." But the parties did not similarly agree that cancellation of the lease would be permitted if Empower failed to renovate the pool area in a timely manner. *See Rogers*, 772 S.W.2d at 79 ("Since the parties obviously knew how to create a condition in paragraph 1, the dissimilar language in paragraph 2 indicates that the parties intended the latter paragraph to act as a covenant."). The lease agreement specified that in the event of other acts of default by Empower, Covenant would generally be entitled to remedies in the form of a proportionate

reduction in rent or specific performance. And the lease agreement further specified that throughout the lifespan of the lease, Covenant would pay one amount in rent for the non-pool area of the premises and a different amount for the pool area. Given the lack of conditional language in Section 3(c) and given that, per the terms of the lease agreement, Covenant's remedy was to either move into the building and seek to only pay the rent associated with the non-pool area of the building or force Empower's specific performance under Section 3(c), we conclude that Section 3(c) is unambiguously a covenant, not a condition precedent.[4] *See Block 316 Garage, Ltd. v. Wortham & Van Liew*, 705 S.W.2d 249, 252 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) ("Although failing to comply with paragraph 2, section 1 of the lease may have been a violation of a term of the lease, Block 316's violation could not forever bar commencement because Wortham & Van Liew's remedy is damages."). Accordingly, because Section 3(c) is unambiguously a covenant, we conclude that the trial court erred by rendering judgment that it was a condition precedent to Covenant's performance. And because the trial court's judgment, including the declarations, damages, and fee award, stemmed from the jury's finding that Section 3(c) was a condition precedent, we reverse all portions of the trial court's judgment.

Of course, this does not necessarily mean that Empower was entitled to ignore Section 3(c). However, if Covenant wanted its own performance under the lease agreement

---

[4] Because of this conclusion, we need not address Empower's argument that, even if Section 3(c) is ambiguous as to whether it is a condition precedent, such an ambiguity must be resolved as a matter of law. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *cf. Gulf Liquids New River Project, LLC v. Gusby Eng'g, Inc.*, 356 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (interpreting ambiguous contract provision as covenant as matter of law because without clear language, such provisions are not conditions precedent).

excused based on Empower's failure to timely and adequately renovate the pool area, it was incumbent on Covenant to seek a finding from the jury—or conclusively prove—that Empower materially breached its contractual obligations before any alleged breach on Covenant's part.[5] *See Earth Power A/C & Heat, Inc. v. Page*, 604 S.W.3d 519, 525 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (holding that "judgment cannot rest on a theory that Page's breach is excused by Earth Power's prior material breach" where Page "did not obtain a finding in his favor on the defense of prior material breach"); *cf. Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 482 (Tex. 2019) ("Rohrmoos cites no authority that has interpreted *Davidow* [*v. Inwood North Professional Group—Phase I*, 747 S.W.2d 373 (Tex. 1988)] to mean that a tenant cannot terminate a commercial lease for material breach of the contract. This is because there is none, and we see no reason to hold otherwise."); *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 198 (Tex. 2004) (jury finding on materiality of breach not required where jury found party breached contract and materiality was established as matter of law); *Hudson v. Wakefield*, 645 S.W.2d 427, 431 (Tex. 1983) (concluding that contract provision was covenant rather than condition precedent and reversing and remanding for trial court to

---

[5] On this record, we cannot conclude that the jury's finding that Empower did not satisfy Section 3(c) is implicitly a finding that it materially breached the contract. First, Covenant never pleaded a breach-of-contract claim and it does not suggest on appeal that we may affirm the trial court's judgment on such a theory. Second, during the hearing on Empower's Rule 248 hearing, counsel for Covenant informed the court that "what [Empower] want[s] you to rule upon as a matter of law is . . . a breach of contract default claim that we have not pled, that we are not going to seek remedies for before this jury," and that "if the jury comes back and says no to the condition question, there's not a second question that says, well, is it just a regular breach then? We don't have that claim." Third, the jury instructions defined conditions precedent to performance, in part, as "acts or events that occur after the contract is made and that must occur before there is a right to immediate performance and *before there can be a breach of contractual duty*." (Emphasis added). *See McMahan v. Greenwood*, 108 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("Failure to satisfy a condition precedent generally results in no liability, but failure to perform a contractual obligation may create liability." (citing *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992)).

determine whether failure to comply with covenant was material). Because it did not do so, we cannot affirm the trial court's judgment on the theory that Empower's actions constituted a prior material breach of the parties' contract. *See Page*, 604 S.W.3d at 525; *cf. Clear Lake City Water Auth. v. Kirby Lake Dev., Ltd.*, 123 S.W.3d 735, 755 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (appellees' declaratory-judgment claim was not an alternative ground on which court of appeals could uphold trial court's judgment on breach-of-contract claim).

Lastly, Empower argues that the case should be remanded for a determination of its breach-of-contract claim. Covenant contends that Empower waived any potential remand on this claim by failing to "object to the conditioning instructions that prevented the jury from providing answers regarding Empower's counterclaim." But Covenant's argument presumes that remanding Empower's counterclaim requires a conclusion that the conditioning language in the jury charge was erroneous. We do not agree with this presumption. The trial court's error was in failing to resolve the interpretation of Section 3(c) as a matter of law, and it had the opportunity to either prevent or correct its error when it was presented with Empower's Rule 248 motion, its motion to reconsider, and its motion for new trial. But the trial court denied those motions, either by explicit ruling or by operation of law. Thus, by its various motions and the associated rulings, Empower preserved error with respect to the pertinent issue here, *see Browder v. Moree*, 659 S.W.3d 421, 423 (Tex. 2022) (per curiam), and because the trial court's error resulted in the rendition of an improper judgment, reversal and remand for a new trial on Empower's as-yet-unreached breach-of-contract claim is appropriate, *see* Tex. R. App. P. 44.1; *Ditech Servicing, LLC v. Perez*, No. 13-17-00123-CV, 2018 WL 4171358, at *6 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2018, pet. denied) (mem. op.). We sustain Empower's first issue.

15

### III. DECLARATIONS A) AND B)

By its second issue, Empower contends that a) and b) of the trial court's declarations are improper findings of fact and do not resolve any justiciable controversies. "The power to determine an issue of fact, . . . 'does not concomitantly carry with it the power to render such a finding of fact as a declaratory judgment.'" *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 699 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (quoting *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 140 (Tex. App.—El Paso 1997, pet. denied)). "If a factual dispute is the only issue to be resolved, a declaratory judgment is not the proper remedy." *Hill*, 964 S.W.2d at 140. Additionally, "[a] declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995).

In declaration a), the trial court declared "that the Lease was scheduled to commence on October 26, 2019," and in declaration b), the trial court declared "that, based on Empower's letter dated July 15, 2019, Empower deferred commencement of the lease until April 23, 2020." We agree with Empower that these are not permissible declarations. For declaration a), the parties did not dispute that the lease was originally scheduled to commence on October 26, 2019, and this declaration did not resolve any controversy between the parties. *See McNitt v. Lakeline Crossing Phase 2 LP*, No. 03-23-00308-CV, 2025 WL 1240786, at *6 (Tex. App.—Austin Apr. 30, 2025, no pet.) (mem. op.) ("[I]f there is undisputed evidence, there is no justiciable controversy, and the trial court cannot issue a declaratory judgment."). Additionally, for declaration b), whether or not Empower deferred commencement of the lease by sending its July 15, 2019 letter is ultimately fact question. *See id.* at *7; *Indian Beach Prop. Owners' Ass'n*, 222 S.W.3d at 700. Accordingly, we conclude that declarations a) and b) are not

the proper subject-matter for a declaratory judgment. *See McNitt*, 2025 WL 1240786, at *7; *Indian Beach Prop. Owners' Ass'n*, 222 S.W.3d at 699.

We sustain Empower's second issue.

## IV.    CONCLUSION

We reverse all portions of the trial court's final judgment. "When reversal of a declaratory judgment is warranted, we render judgment unless remand is necessary for further proceedings." *Double Diamond, Inc. v. Saturn*, 339 S.W.3d 337, 347 (Tex. App.—Dallas 2011, pet. denied). Thus, we render judgment that Covenant take nothing on its declaratory-judgment requests that correspond to declarations a)–c) in the trial court's judgment. As it pertains to the remaining declarations, because the relief sought is intertwined with Empower's breach-of-contract claim, and because inconsistent results may occur if we render judgment on those declarations, we reverse declarations d) through n) and remand them to the trial court along with Empower's unreached breach-of-contract counterclaim for further proceedings. *See Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 166 (Tex. 1982) ("The possibility of such inconsistent results is intolerable and for this reason the entire judgment must be reversed and the entire cause remanded for a new trial."); *cf. Clear Lake Auth.*, 123 S.W.3d at 755 ("The viability of the trial court's declaration is wholly dependent upon the existence of the contract liability the Authority challenges."). We also reverse the award of attorney's fees and damages and remand those claims for further proceedings consistent with this opinion.

17

_____

Maggie Ellis, Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Reversed and Rendered in Part; Reversed and Remanded in Part

Filed:   July 3, 2026